```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                       FORT MYERS DIVISION


MICHAEL JAMES MUNION,

                  Plaintiff,

vs.                                  Case No.  2:10-cv-273-FtM-29SPC

LT. BRANDON MALOY,
                  Defendant.
_____/
```

## OPINION AND ORDER

### I. Status

This matter comes before the Court upon review of Defendant Maloy's Motion for Summary Judgment (Doc. #24, Motion), filed October 11, 2011.  Defendant submits the following exhibits in support of his Motion:  Affidavit of Defendant, Brandon Maloy (Exh. A, "Maloy Aff."), Declaration of Resident William Morales (Exh. B, "Morales Decl."),[1] and FCCC Communication Form, dated March 18, 2010, signed by Plaintiff regarding the incident in question (Exh. C, "Plaintiff's Communication").  Plaintiff was duly advised of the time period within which to respond to a dispositive motion, as

---

[1] The "General Affidavit" submitted by Morales was not sworn to by the declarant before an officer authorized to administer oaths, such as a notary public.  Under 28 U.S.C. § 1746, a declaration submitted "under the penalty of perjury, and dated" is admissible in lieu of a sworn affidavit on a motion for summary judgment. Consequently, the Court construes the statement by Morales admissible evidence as a declaration.

well as the tenets of Rule 56.  <u>See</u> October 18, 2010 Order (Doc. #12) and November 29, 2011 Order (Doc. #25).  After affording Plaintiff an extension of time, Plaintiff filed a response to the Motion on February 29, 2012 (Doc. #30, Response).

Plaintiff is proceeding on his *pro se* Amended Civil Rights Complaint (Doc. #10, Amended Complaint).  The Amended Complaint alleges that Plaintiff's Fourteenth Amendment rights were violated when Defendant Maloy subjected Plaintiff to an unnecessary and excessive use of force on March 16, 2012. Amended Complaint at 5-6.  Plaintiff attaches the following unmarked exhibits to the Amended Complaint: (i) FCCC Communication Form, dated March 18, 2010, signed by Plaintiff regarding the incident in question (Doc. #10-1 at 1, the same exhibit is labeled and identified as Exhibit C to Maloy's Motion); (ii) Declaration of Resident William Morales (Doc. #10-1 at 2, the same exhibit is labeled and identified as Exhibit B to Maloy's Motion); (iii) "General Affidavit"[2] of Plaintiff (Doc. #10-1 at 3); (iv) typewritten "FCCC Resident Grievance" dated March 12, 2010 (Doc. #10-1 at 4); (v) duplicate of (i), *supra* (Doc. #10-1 at 5); (vi) typewritten statement that is undated and unsigned regarding the March 16 incident (Doc. #10-1 at

---

[2]Plaintiff's statements made in his Affidavit were not sworn to  before an officer authorized to administer oaths, such as a notary public.  Additionally, Plaintiff's statements were not submitted "under the penalty of perjury, and dated" as required by 28 U.S.C. § 1746.  Thus, the Court does not consider Plaintiff's statements admissible evidence as a declaration.

6-7); (vii) correspondence dated March 30, 2010, to Plaintiff from the Department of Children and Families ("DCF"), Office of Inspector General (Doc. #10-1 at 8); (viii) correspondence dated March 26, 2010, to Plaintiff from DCF, Adult Protective Investigator (Doc. #10-1 at 9); (ix) correspondence dated March 29, 2006, to Plaintiff from DCF, Adult Protective Investigator (Doc. #10-1 at 10); (x) correspondence dated February 20, 2006, to Plaintiff from DCF, Director, Mental Health Program Office (Doc. #10-1 at 11); (xi) relief requested portion of Amended Complaint (Doc. #10-1 at 12); and, (xii) affiant page of Amended Complaint (Doc. #10-1, at 13).

Defendant submits that based upon applicable law and the uncontroverted facts, Defendant is entitled to summary judgment as a matter of law. Motion at 14. Plaintiff provides no additional documentation in support of his Response, and relies upon the allegations in his Amended Complaint and the attachments thereto. Response at 1. This matter is ripe for review.[3]

---

[3]On August 13, 2012, Defendant notified the Court of Plaintiff's death. See Courtesy Notice to Court of Plaintiff's Death (Doc. #31, Notice). According to the Certification of Death, which is attached as Exhibit A to the Notice, Plaintiff's death occurred on June 15, 2012. Neither the Notice nor the Certification of Death states the cause of Plaintiff's death. See generally Notice, Exh. A. Defendant states that the Notice "is not intended to invoke Fed. R. Civ. P. 25(a)." Id. at 1.

## II. Summary Judgment Standard

"Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Coward, 631 F.3d 1337, 1341 (11th Cir. 2011)(internal quotations and citations omitted). See also Fed. R. Civ. P. 56(c)(2). "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial." Moton, 631 F.3d at 1341 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The standard for creating a genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment," Chapman v. A1 Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc)(emphasis added), not to make all *possible* inferences in the non-moving party's favor.

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." Beard v. Banks, 548 U.S. 521, 529 (2006)(citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party. Beard, 548 U.S. at 529 (citations omitted); Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Conclusory allegations based on subjective beliefs are not sufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000). Further, "allegations in affidavits must be based on personal knowledge, and not be based, even in part, 'upon information and belief.'" Pittman v. Tucker, 213 F. App'x 867, 870 (11th Cir. 2007)(quoting Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002)). In the summary judgment context, however, the Court must construe *pro se*

pleadings more liberally than those of a party represented by an attorney. Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002).

### III. Applicable Law and Finding of Facts

The State of Florida enacted the Involuntary Civil Commitment of Sexually Violent Predators Act ("SVP Act") by which a person determined to be a sexually violent predator[4] is required to be housed in a secure facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Fla. Stat. § 394.917(2). The SVP Act was promulgated for the dual purpose "of providing mental health treatment to sexually violent predators and protecting the public from these individuals." Westerheide v. State, 831 So. 2d 93, 112 (Fla. 2002).

Plaintiff is civilly committed; thus, the FCCC is not a prison and Plaintiff is not a prisoner. Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has recognized that an individual who has been involuntarily civilly confined has liberty

---

[4]A "sexually violent predator" is defined by the Act as any person who:

(a) Has been convicted of a sexually violent offense; and

(b) Suffers from a mental abnormality or personality disorder that makes the person more likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.

Section 394.912(10), Fla. Stat. (2008).

interests under the Due Process Clause of the Fourteenth Amendment that "require the State to provide minimally adequate or reasonable training to ensure safety and freedom from undue restraint." Youngberg v. Romeo, 457 U.S. 317, 319 (1982). Thus, the Supreme Court has opined that, at least in regards to certain aspects of civil detainees' confinement, they are afforded a higher standard of care than those who are criminally committed.[5] See Id. at 321-322; Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996)(holding that "persons subjected to involuntary civil commitment are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."). See also Lavender v. Kearney, 206 F. App'x 860, 863 (11th Cir. 2006).

The Eleventh Circuit recognizes that the Fourteenth Amendment protects pretrial detainees from the use of excessive force; however, because the Eighth Amendment standard is the same, "decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." Cottrell v. Caldwell, 85 F.2d 1480, 1490 (11th Cir. 1996). See also, Smith v. Vavoulis, 373 F. App'x 965, 966 (11th Cir. 2010); Williams v. Scott, 433 F.

---

[5]In Youngberg, the issue was whether a severely retarded young man had received proper treatment in a state facility. Id. at 309.

App'x 801, 803-04 (11th Cir. 2011)(applying Cottrell in case involving FCCC resident alleging excessive sue of force).[6]

In analyzing an Eighth and Fourteenth Amendment excessive use of force case, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, ___ U.S. ___, 130 S. Ct. 1175, 1178 (2010). The Court examines the following factors in evaluating whether the force was applied maliciously and sadistically:

> a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response.

Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009). The Court considers these factors "as reasonably perceived by" the correctional officer based on the facts known to him at the time and "give a wide range of deference to prison officials acting to preserve discipline and security." Id. (quotation marks omitted in

---

[6]But see Enriquez v. Kearney, 694 F. Supp. 2d 1282, 1291-1292 (S.D. Fla. 2010)(recognizing that the Eighth Amendment's "malicious or sadistic" intent is at odds with the Fourteenth Amendment's punishment benchmark and evaluating claim under the "revised" test adopted in Telfair v. Gilbert, 868 F. Supp. 1396, 1404 (S.D. Ga. 1994), which requires a lesser showing of intent than that set forth by the Eighth Amendment. Namely, whether there is direct evidence that the use of force was intended to punish the detainee. If not, (1) whether a legitimate use of force is evident from the circumstances, and (2) if so, whether the force was necessary to further that interest. Telfair at 1412.

second quotation). Nonetheless, deference to correctional officers is not absolute and does not insulate from review actions taken in bad faith or for no legitimate purpose. <u>Ort v. White</u>, 813 F.2d 318, 322 (11th Cir. 1987).

### A. Undisputed Facts

The following facts are undisputed by the parties. Plaintiff is involuntarily confined at the Florida Civil Commitment Center ("FCCC") pursuant to the SVP Act. Motion at 3, ¶13. Defendant Maloy is employed by "The GEO Group, Inc.," and works at the FCCC. Amended Complaint at 2; Maloy Aff., ¶3. On March 16, 2010, Defendant Maloy placed Plaintiff in secure management confinement. Maloy Aff., ¶7. Plaintiff has "a history of self-mutilation" stemming from his "bipolar disorder." Amended Complaint at 5, ¶2; Motion at 3, ¶14. On the date of the incident, Plaintiff had "relapsed into his mental illness" and "had climbed onto the sink in [his] cell and was in the progress of cutting [him]self on the fire spinkler head." Amended Complaint at 5, ¶¶3-4; Maloy Aff., ¶11 (observing Plaintiff "trying to cut his wrist on the fire sprinkler in a sawing motion"); Morales Aff. ¶3[7] (stating when Maloy opened door and "rushed in," Morales saw Plaintiff "standing on the sink"). Defendant Maloy ordered Plaintiff "to get down" from the sink, but Plaintiff "ignored" him. Amended Complaint (Doc. #1-1 at 6); <u>see also</u> Maloy Aff., ¶12 (Maloy states he twice

---

[7]The Court assigned numbers to the unnumbered sequential paragraphs in Morales' Declaration.

ordered Plaintiff to stop cutting himself); Morales Aff., ¶2 (Morales acknowledges hearing Plaintiff and Maloy "exchange profanity" before Maloy entered the cell). After Plaintiff refused to comply with Maloy's order to get down off the sick, Maloy entered the cell and grabbed Plaintiff who was still standing on the sink. Amended Complaint at 5, ¶6; Maloy Aff., ¶13; Morales Aff., ¶3. Plaintiff fell backward "head first" onto the floor and was rendered unconscious due to the fall. Amended Complaint at 5, ¶6; Maloy Aff., ¶17; Morales Aff., ¶3. Plaintiff did not extend his arms to break his fall. Morales Aff., ¶3. Medical staff immediately was called and administered care to Plaintiff before transporting Plaintiff to the hospital for additional treatment. Maloy Aff., ¶18; Morales Aff., ¶5; and, Amended Complaint at 6, ¶7.

### B. Disputed Facts

### 1. Plaintiff's version of events

Plaintiff alleges that Defendant Maloy "punched" him "in the chest with his right fist and followed through with a sweeping motion with his left arm into [Plaintiff's] ankles sweeping [Plaintiff] off the sink." Amended Complaint at 5, ¶5. Plaintiff contends that Maloy "intentionally knocked [Plaintiff's] feet under [Plaintiff]," which caused Plaintiff's fall. Amended Complaint (Doc. #10-1 at 1); Exh. C to Motion. Plaintiff claims that, after landing on the concrete floor and being knocked unconscious, "other residents witnessed" Defendant Maloy "brutally and repeatedly

kicking [Plaintiff] about the torso." Amended Complaint, ¶6.

Plaintiff submits the Declaration of resident Morales in support of Plaintiff's version that he did fall off the sink, but was forcibly removed by Maloy. Exh. B. Plaintiff provides no documentation, other than his own declaration, in support of his allegation that Defendant Maloy continued "brutally and repeatedly kicking [Plaintiff] about the torso" after he fell to the ground and was rendered unconscious. Amended Complaint, ¶6.

### 2. Defendant's version of events

Defendant concedes that "he entered the cell with the intent of grabbing the Plaintiff by the waist in order to take him off the sink." Motion at 4, ¶19; Maloy Aff., ¶13. However, Maloy contends that Plaintiff "jumped backwards and his right leg slipped out from underneath of him." Id.; Maloy Aff., ¶15. Maloy also claims he attempted to break Plaintiff's fall, but was unable to prevent Plaintiff from falling headfirst onto the concrete floor. Id.; Maloy Aff., ¶¶16-17. Defendant Maloy denied he ever kicked or battered Plaintiff. Maloy Aff., ¶¶19-20.

In support, Defendant submits his own Affidavit (Doc. #14-1), and points out that neither resident Morales, in his Declaration, nor Plaintiff, in any of his FCCC communication or grievance forms, ever claimed that Defendant Maloy battered and kicked Plaintiff after he fell to the floor. Further, Defendant argues that Plaintiff's statement in his Declaration is not based on first-hand

knowledge because Plaintiff acknowledges that he was rendered unconscious by the fall. Motion at 4, ¶21.

### C. Application of Law to Facts

Based upon a review of the record and considering all factors, the undisputed evidence does not show that Defendant Maloy acted maliciously and sadistically, or with the type of force that shocks the conscious to give rise to a constitutional violation. More specifically, the undisputed evidence reveals that Defendant Maloy entered the cell only after Plaintiff refused to stop his self-destructive behavior. Maloy's purpose in applying force to remove Plaintiff from the sink was to prevent Plaintiff from cutting his wrists on the fire sprinkler head. Thus, whether Plaintiff fell backwards, or whether Maloy grabbed Plaintiff around "the chest with his right fist" and used "a sweeping motion" knocking Plaintiff off his feet is not relevant. Here, Maloy employed force only to **prevent** harm to Plaintiff, not to cause harm to Plaintiff. Plaintiff's admission that he previously had engaged in acts of self-mutilation, if known to Defendant Maloy, is further evidence that Maloy had reason to believe that Plaintiff posed a threat to himself. Additionally, the fact that Maloy immediately summoned medical personnel to assist Plaintiff is strong evidence that there was no malicious or sadistic intent by Maloy in his use of force. Admittedly, Plaintiff sustained significant injuries. However, Defendant's Maloy's "inability to reasonably anticipate the

severity of the injury" outweighs any injury sustained by Plaintiff. Fennell v. Gilstrap, 559 F.3d 1212, 1219 (11th Cir. 2009)(finding that officer did not use excessive force when he kicked plaintiff in the face, despite plaintiff's significant injuries, because the undisputed evidence revealed that officer intended to kick plaintiff in arm and "did not foresee that his kick would land on [plaintiff's] face."). Here, Plaintiff placed himself in peril and Defendant Maloy took immediate[8] action to remove Plaintiff from the sink in order to prevent him from harming himself.

Plaintiff's allegation that Maloy kicked and punched him after he fell to the ground is not supported by any evidence. Plaintiff admits that he was unconscious from the fall; and, thus Plaintiff does not have first-hand knowledge of the events that occurred after he fell. Plaintiff claims that "other residents witnessed" this alleged beating, but does not provide affidavits from these residents, or even identify the names of the residents who witnessed this alleged beating. Additionally, Morales, who is the only resident who provided a statement about the incident, states that after Plaintiff fell and lay unconscious, "Lieutenant Maloy came out the cell [and] looked around." Exh. B at ¶4. Resident Morales continues to provide a chronological narrative of the events after Plaintiff fell, concluding with Plaintiff "being

---

[8]Resident Morales states that Maloy "rushed in the cell." Exh. B at ¶3.

-13-

placed on a backboard and a neck brace placed on him." Id. Notably, Morales does not allege that Maloy even touched Plaintiff after he landed on the floor. See generally id. The Court finds the record is devoid of any evidence that Maloy used any force on Plaintiff after he was laying on the floor unconscious, yet alone excessive force.

Plaintiff has failed to produce any evidence that Maloy acted maliciously and sadistically in using force to remove him from the sink, or any evidence that Maloy used any force on him after he was on the floor. Plaintiff has therefore failed to show any constitutional violation. Consequently, based upon the record before the Court and the applicable law, the Court finds that Defendant Malloy is entitled to summary judgment as a matter of law.

Because the court is dismissing Plaintiff's federal claims, it chooses not to exercise supplemental jurisdiction over Plaintiff's related state law claims. See 28 U.S.C. § 1367(a) and (c). Thus, the Court dismisses Plaintiff's pendent state law claims without prejudice.

ACCORDINGLY, it is hereby

**ORDERED and ADJUDGED:**

1. Defendant Malloy's Motion for Summary Judgment (Doc. #24) is **GRANTED.**

2.   The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions and deadlines, and close this file.

**DONE AND ORDERED** at Fort Myers, Florida, on this __20th__ day of September, 2012.

                                      JOHN E. STEELE
                                      United States District Judge

SA: hmk
Copies: All Parties of Record